[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 94.]

PATON, N.K.A. SAXTON, APPELLEE, *v*. PATON ET AL.; ALLEN COUNTY CHILD

SUPPORT ENFORCEMENT AGENCY, APPELLANT.

[Cite as *Paton v. Paton*, 2001-Ohio-291.]

*Domestic relations—Supplemental security income benefits received by disabled child do not constitute a financial resource of the child pursuant to R.C. 3113.215(B)(3)(f) for purposes of justifying a trial court's deviation from the basic child support schedule.*

(No. 99-848—Submitted December 12, 2000—Decided March 7, 2001.)

APPEAL from the Court of Appeals for Allen County, No. 1-98-74.

_____

SYLLABUS OF THE COURT

Supplemental security income benefits received by a disabled child do not constitute a financial resource of the child pursuant to R.C. 3113.215(B)(3)(f) for purposes of justifying a trial court's deviation from the basic child support schedule.

_____

ALICE ROBIE RESNICK, J.

{¶ 1} On June 9, 1998, appellant, the Allen County Child Support Enforcement Agency, filed a "Motion for Review of Child Support, Determination of Arrearages, Lump Sum Judgment, Wage Withholding," in a case involving Ann Paton (n.k.a. Ann Saxton) and her former husband, Michael Paton.

{¶ 2} The Patons' marriage was dissolved in 1983, and pursuant to the separation agreement Michael Paton was obligated to pay child support and to maintain major medical and hospitalization insurance for the benefit of his children. Saxton is the residential parent of their youngest daughter, Michelle, who was born in 1982 and has a learning disability.

{¶ 3} On August 12, 1998, at a hearing before a magistrate on appellant's motion, Paton and Saxton testified regarding their respective incomes and expenses. At the time of the hearing, Michelle was enrolled in a public high school and received supplemental security income ("SSI") benefits in the amount of $387 a month ($4,644 a year). On August 13, 1998, the magistrate filed a decision in which Paton's child support obligation was reduced.

{¶ 4} Saxton filed objections to the magistrate's decision because the magistrate treated Michelle's SSI benefits as a financial resource of the child pursuant to R.C. 3113.215(B)(3)(f), and deducted an amount representing Michelle's annual SSI benefits from her parents' combined annual support obligation.[1] The trial court overruled Saxton's objections and adopted the magistrate's decision and recommendation. A final order modifying child support was filed on October 5, 1998.

{¶ 5} On appeal from the trial court's judgment, Saxton argued that the trial court erred when it included Michelle's SSI benefits in the basic child support worksheet. Saxton maintained that these benefits are intended to supplement Michelle's income and should not be used to reduce her parents' support obligation.

{¶ 6} On March 16, 1999, the court of appeals reversed the trial court's judgment and remanded the matter for further proceedings. The court of appeals concluded that the SSI benefits Michelle receives as a consequence of her disability "should not be considered when determining the support obligation of her parents. To do so defeats the purpose behind supplemental security income benefits, and it also interferes with the eligibility guidelines of the social security laws." The court

---

1. In 1998, Michelle received $387 a month ($4,644 a year) in SSI benefits. The combined annual child support obligation of her parents was $6,676. The trial court subtracted Michelle's SSI benefits from her parents' combined annual child support obligation. The remaining $2,032 was to be paid by Saxton and Paton according to their proportional share of the total family income. Paton earned seventy percent of the total family income. Thus, Paton's annual child support obligation was determined to be $1,422. From this, the court subtracted $642 paid by Paton for expenses, leaving $798. This results in a monthly child support obligation of $66.50.

of appeals found "as a matter of law that supplemental security income benefits should not be used to decrease the parent's support obligation." The court also noted that the trial court did not comply with R.C. 3113.215(B)(1)(b) and (B)(2)(c) because it failed to journalize findings of fact supporting its deviation from the basic child support schedule.

{¶ 7} On April 30, 1999, the Allen County Child Support Enforcement Agency filed its notice of appeal in this court. We allowed the appeal and *sua sponte* ordered that this cause be held for our decision in *Williams v. Williams* (2000), 88 Ohio St.3d 441, 727 N.E.2d 895.[2] See *Paton v. Paton* (1999), 86 Ohio St.3d 1465, 715 N.E.2d 568. We subsequently *sua sponte* lifted the stay and ordered the parties to brief the merits. See (2000), 89 Ohio St.3d 1436, 730 N.E.2d 990.

{¶ 8} The issue presented for our determination is whether supplemental security income benefits received by a disabled child constitute a financial resource of the child pursuant to R.C. 3113.215(B)(3)(f) in order to justify a trial court's deviation from the basic child support schedule.

{¶ 9} In any action in which a child support order is issued or modified, a trial court is required to determine the amount of the obligor's child support obligation consistent with the basic child support schedule and guidelines set forth in R.C. 3113.215(D), (E), and (F). R.C. 3113.215(B)(1). The figure calculated in accordance with these guidelines represents the amount of child support due and is rebuttably presumed to be correct. *Id.* A trial court may not deviate from the amount calculated using the guidelines, unless the court considers the factors set

---

2. In *Williams*, we announced that "[a] disabled parent is entitled to a full credit in his or her child support obligation for Social Security payments received by a minor child due to the parent's disability." *Id.,* 88 Ohio St.3d 441, 727 N.E.2d 895, syllabus.

   *Williams* is distinguishable from the case at bar because in *Williams* it was the obligor, rather than the child, who was disabled. Moreover, the categories of benefits at issue in each of these cases are different. Thus, in *Williams*, we found that "Social Security payments are tantamount to earnings by the disabled parent." *Id.* at 444, 727 N.E.2d at 898.

forth in R.C. 3113.215(B)(3)(a) through (p), and determines that such an amount "would be unjust or inappropriate and would not be in the best interest of the child." R.C. 3113.215(B)(2)(c)(i). Additionally, the court must journalize the "amount of child support calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet * * * its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination." R.C. 3113.215(B)(2)(c)(ii); see, also, *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, paragraph three of the syllabus.

{¶ 10} In order to justify its deviation from the basic child support schedule, the trial court, in the case at bar, relied on R.C. 3113.215(B)(3)(f), which allows a court to consider the "financial resources and the earning ability of the child." The financial resource attributed to Michelle was the $4,644 that she received in annual SSI benefits.

{¶ 11} While we do not dispute that SSI benefits are arguably a financial resource of a recipient, we do not believe that SSI benefits are the type of "financial resource" that justifies a trial court's decision to deviate from the basic child support schedules.

{¶ 12} "The basic purpose underlying the supplemental security income program is to assure a minimum level of income for people who are age 65 or over, or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level." Section 416.110, Title 20, C.F.R.

{¶ 13} The supplemental security income program provides means-tested public assistance to those who qualify. See, generally, Section 1382a, Title 42, U.S.Code. The amount of SSI an eligible individual receives is determined based upon the individual's income and resources. *Id.* If the recipient of SSI is a child who receives child support, the amount of child support received from the absent

4

parent must be taken into account when determining the amount of SSI the child will receive.  Section 1382a(b)(9), Title 42, U.S.Code.  A recipient's eligibility for continued participation in the program as well as the amount of benefits the participant receives is reviewed periodically.  Section 1382(c)(1), Title 42, U.S.Code.

{¶ 14} A majority of jurisdictions that have addressed this issue hold that "a parent is not entitled to a credit in his [or her] child support obligation for SSI benefits received on behalf of a disabled child."  *State ex rel. Dept. of Social Serv. Div. of Child Support Enforcement v. Kost* (Mo.App.1998), 964 S.W.2d 528, 530, citing *Hollister v. Whalen* (1997), 244 A.D.2d 650, 663 N.Y.S.2d 918; *Bennett v. Virginia* (1996), 22 Va.App. 684, 694-695, 472 S.E.2d 668, 673; *Kyle v. Kyle* (Ind.App.1991), 582 N.E.2d 842, 846; *In re Marriage of Thornton* (Colo.App.1990), 802 P.2d 1194, 1196; and *Oatley v. Oatley* (1977), 57 Ohio App.2d 226, 11 O.O.3d 260, 387 N.E.2d 245.

{¶ 15} According to one court, "Congress included disabled children under the SSI program in the 'belief that disabled children who live in low-income households are certainly among the most disadvantaged of all Americans and that they are deserving of special assistance in order to help them become self-supporting members of our society.' " *Kyle v. Kyle,* 582 N.E.2d at 846 (quoting H.R.Rep. No. 231, 92nd Cong., 2d Sess., reprinted in 1972 U.S.Code Cong. & Admin. News 4989, 5133-5134).

{¶ 16} The factual scenario before us is quite different from one involving a child who has independent financial assets such as an inheritance or income derived from employment.  While these assets may lessen a child's need for financial support from his or her parents, SSI benefits, which are unlike other types of financial resources, do not diminish a child's need for support.  See *Kost*, 964 S.W.2d at 530.  SSI benefits received by a disabled child "are intended to

supplement other income, not substitute for it." *Oatley v. Oatley,* 57 Ohio App.2d at 228, 11 O.O.3d at 262, 387 N.E.2d at 246.[3]

{¶ 17} The court of appeals correctly observed that reducing a parent's child support obligation by an amount representing the child's SSI benefits "would frustrate the purpose of the federal law by pushing the child's standard of living back below the federal minimum." Such an approach would result in a "stair-step" effect that would increase the child's reliance on federal assistance while decreasing the parents' financial responsibility, because as the child's SSI benefits increase, the parents' support obligation simultaneously decreases. In order to avoid this unintended and absurd result, "[t]he amount of supplemental security income received is modified as the amount of the recipient's other income changes, not vice versa." *Oatley*, 57 Ohio App.2d at 228, 11 O.O.3d at 262, 387 N.E.2d at 246.

{¶ 18} Parents, to the extent that they are able, have an obligation to support their minor children. In situations where a child is eligible to receive SSI, these benefits are intended to supplement the parents' support obligation, not to reduce it. Consequently, we find that supplemental security income benefits received by a disabled child do not constitute a financial resource of the child pursuant to R.C. 3113.215(B)(3)(f) for purposes of justifying a trial court's deviation from the basic child support schedule. Therefore, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

*Gooding, Huffman, Kelley & Becker* and *John C. Huffman*, for appellee.

*David R. Evans*, for appellant.

_____

3. We recognize that *Oatley* is a pre-guidelines case; however, we find that it remains applicable despite subsequent changes in the law.

January Term, 2001

---